UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No: 12-15391-RBR |
| | Case No: 12-15393-RBR |
| ROSCOE, LLC and | |
| BIMA II, LLC,[1] | Chapter 11 |
| | Jointly Administered |
| Debtors. | |
| _____/ | |

**EMERGENCY MOTION OF DEBTORS PURSUANT TO SECTIONS 105(a), 363(b)(1) AND 363(c)(1) FOR AN ORDER (A) AUTHORIZING THE DEBTORS (I) TO PAY CERTAIN PRE-PETITION EMPLOYEE OBLIGATIONS AND RELATED CLAIMS AND (II) TO CONTINUE TO PROVIDE EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS, AND (B) GRANTING OTHER RELATED RELIEF**
(Expedited Hearing Requested)

**Basis for Expedited Relief**

The Debtors (as defined below) request an emergency hearing on this matter on or before March 8, 2012, to avoid any disruption to their employee ranks as a result of the commencement of the chapter 11 cases. The Debtors respectfully request that the Court waive the provisions of Rule 9075-1(B) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), which require an affirmative statement that the Debtors made a *bona fide* effort to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Roscoe, LLC, d/b/a Shooters Waterfront Cafe USA, and BIMA II, LLC, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this Emergency Motion (the "Motion") for Interim and Final Orders Pursuant to Sections 105(a), 363(b)(1) and 363(c)(1) of title 11, United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") (a) Authorizing the Debtors to (i) Pay certain Pre-Petition Employee Obligations and Related Claims and (ii) to

---

[1]  Roscoe, LLC (Employer Tax I.D. No. 65-0992517) and BIMA II, LLC (Employer Tax I.D. No. 65-0992513).

Continue to Provide Employee Benefits in the Ordinary Course of Business, and (b) granting other related relief, and respectfully represent:

## Summary of Relief Requested

1.      By this Motion, the Debtors request entry of an order pursuant to sections 105(a), 363(b)(1) and 363(c)(1) of the Bankruptcy Code authorizing, but not directing, the Debtors to pay certain prepetition employee obligations and related claims and continue to provide employee benefits in the ordinary course of business (defined below).  The relief requested herein is necessary for the Debtors to continue the operation of their affairs without disruption that may stem from personnel hardship or discontent as a result of the Debtors failing to satisfy such obligations and related claims or providing the aforementioned benefits.

## Jurisdiction and Venue

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.      On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code.  The Debtors are continuing to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      Simultaneous with the filing of this pleading, the Debtors have filed a motion with this Court pursuant to Rule 1015 of the Bankruptcy Rules and Rule 1015-1(B) of the Local Rules seeking joint administration of the Debtors' estates.

5.No creditors' committee has yet been appointed in these cases. No trustee or examiner has been appointed.

### The Debtors

6.Debtor Roscoe, LLC, d/b/a Shooters Waterfront Cafe USA, operates a restaurant business in Fort Lauderdale, Florida offering, among other things, casual indoor and outdoor waterfront dining, as well as banquet and catering services. Debtor BIMA II, LLC[2] owns the real property at which the Debtors operate the restaurant business.

7.For a more detailed description of the Debtors, their creditors and business, as well as the circumstances leading up to these filings, the Debtors refer the Court and other interested parties to the contemporaneously-filed Affidavit of John H. Wile in Support of Debtors' Chapter 11 Petitions and First Day Orders (the "First Day Affidavit"), which is incorporated by reference to the extent required to give context to or factual support for this Motion.

### Relief Requested

8.To minimize the personal hardship to Employees if prepetition Employee Obligations (as defined herein) and Employee Benefits (as defined herein) are not paid or honored, and to maintain morale during this critical time, the Debtors seek entry of an order authorizing the Debtors, in their sole and absolute discretion, to pay and honor all Employee Obligations.

9.In addition, the Debtors seek authority, in their discretion to: (a) continue to maintain and provide all Employee Benefits provided by the Debtors in the ordinary course; and

---

[2] The real property owned by BIMA II, LLC, and upon which a portion of the restaurant is located, also contains additional space that from time to time is utilized as a venue where the Debtors host banquets and various other entertainment events. Such space is commonly referred to as "Bootleggers."

(b) pay all costs and expenses required to be paid under, or incident to, the Employee Benefits to the extent any amounts accrued prepetition and/or accrued postpetition but related to the period prior to the Petition Date.

10.     The Debtors also seek authority, in their discretion, and without the need for further Court approval, to modify, cancel, discontinue and/or replace any policies, plans, offerings or programs relating to any Employee Obligations or Employee Benefits (as defined herein) as they deem appropriate, and to pay any amounts necessary to effect such modification, cancellation, discontinuance or replacement in the ordinary course of business without the need for further Court approval.

11.     The Debtors further seek entry of an order authorizing banks and other financial institutions to receive, process, honor and pay all checks presented for payment and electronic payments related to the foregoing Employee Obligations and Employee Benefits.

12.     Finally, the Debtors request that all applicable banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related to Employee Obligations and Employee Benefits irrespective of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date.

## Basis for Relief

<u>The Debtors' Workforce</u>

13.     In the ordinary course of their business operations, the Debtors employ 95 individuals, (collectively, the "Employees"), who work in different capacities for the Debtors as managers, bartenders, waitstaff, hosts/hostesses, busboys, cooks, and other such job duties.  Of

the Debtors' active Employees,[3] 9 are salaried Employees (the "Salaried Employees") and 86 are hourly Employees (the "Hourly Employees").

14. These Employees perform a variety of critical tasks, including the daily staffing and local management of the Debtors' restaurant business, as well as provide direct services for Debtors' customers. The Employees' knowledge and understanding of the Debtors' operations and customer relations are essential to the effective restructuring of the Debtors' business. Without the continued services of the Employees, an effective restructuring of the Debtors will not be possible.

15. If pre-petition wage, compensation, benefit and reimbursement amounts are not received by the Employees in the ordinary course, they will suffer extreme personal hardship and, in many cases, will be unable to pay their basic living expenses. Such a result obviously would destroy Employee morale and result in unmanageable Employee turnover, causing immediate and pervasive damage to the Debtors' ongoing business operations. Any significant deterioration in morale at this time will substantially and adversely affect the Debtors and their ability to reorganize, thereby resulting in immediate and irreparable harm to the Debtors and their estates.

The Employee Obligations

16. In the ordinary course of business, the Debtors pay and honor certain amounts to, or on behalf of, their Employees (collectively, the "Employee Obligations").

*Honoring Checks for and Payment of Unpaid Compensation*

17. The Debtors pay wages and other compensation to their Employees on a bi-weekly basis. The Debtors' aggregate bi-weekly gross payroll for all Employees including

---

[3] The Debtors' Employees are co-leased through a contractual relationship with Oasis Outsourcing ("Oasis") (as successor in interest to Professional Employer Plans, Inc. and Advantage Employer Solutions, Inc.).

wages, salaries, and other forms of compensation averages approximately $65,000. For purposes of administration and distribution of payroll, the Debtors provide Oasis, their employee leasing company, with funding for all payroll amounts. Specifically, the Debtors remit gross payroll amounts, which includes the employee portion of all federal withholding taxes, employer's share of federal and local taxes, as well as voluntary and non-voluntary Employee deductions, to Oasis on a weekly basis.

18.     The Debtors' pay period for their Employees begins on Friday and ends on Thursday; for a period of two (2) weeks, (the "Pay Period"). Accordingly, such Employees are paid on a bi-weekly basis. Employee wages are customarily paid on the first Wednesday one week following the end of an Employee Pay Period (or 7 days after the end of a Pay Period) (the "Pay Day"). The Debtors pay substantially all of each pay period's payroll to Oasis on the day of each Pay Day. As of March 5, 2012, the Debtors owe approximately $13,928.57 to their Employees on account of accrued, but unpaid wages, salaries, and other compensation (collectively, the "Unpaid Wages and Salaries"). A copy of the Pre-Petition Employee Wages List is attached hereto as Exhibit A.

*Remitting and/or Paying Appropriate Deductions and Withholdings*

19.     Given the Debtors use of Oasis, the Debtors do not directly withhold any amounts from Employee wages and salaries, nor do the Debtors' directly remit any withheld amounts, or required federal or local taxes associated with the wages and salaries, to the appropriate taxing authorities. Oasis is directly responsible for the withholding of all required taxes and deductions and the remittance of same to all appropriate governmental authorities and third parties

20. The Debtors' intent is to continue to utilize Oasis post-petition, in the ordinary course of business and in the same manner as pre-petition, in accordance with the terms of their agreements with Oasis. [4]

The Employee Benefits

21. In the ordinary course of their business operations, the Debtors provide certain of their Employees with a number of benefits including without limitation: (i) medical and health benefits, (ii) expense reimbursements, (iii) and vacation pay (collectively, the "Employee Benefits"), as described in further detail below.

### *Health Benefits*

22. The Debtors offer their Salaried Employees and certain Hourly Employees health insurance (the "Health Benefits") through Coventry Health Care. The Health Benefits consist of general medical coverage for emergency and routine medical care, as well as pharmaceutical coverage. The Debtors fund the entire premium only for the individual Salaried Employee. In the event a Salaried Employee seeks to insure a spouse or child(ren) under the Health Benefits plan, the Employee is responsible for payment of the additional portion of the premium. To the extent an Hourly Employee seeks coverage under the Health Benefits Plan, they are responsible to fund the entire premium.[5] As of March 1, 2012, the Debtors pay $2,600 for the Coventry Health Care plan each month to maintain the Health Benefits plan.

### *Expense Reimbursement*

---

[4] A copy of the Debtors' agreements with Oasis will be provided to the Court, the United States Trustee or any statutory committee appointed in these cases upon request.

[5] Certain Hourly Employees, however, who have been with the Debtors for an extended period of time are covered under the Debtors' Health Benefit plans at full cost to the Debtors.

23. The Debtors reimburse five (5) of their management Employees for business expenses incurred in the performance of their duties. Reimbursable business expenses include, among other expenses, those incurred in connection with travel, gasoline charges, and cellular phone charges (collectively, the "Reimbursable Expenses"). Such expenses are satisfied by the Debtors through a set monthly payment made to those Employees entitled to reimbursement, with no monthly payment exceeding $400. As of the Petition Date, an aggregate amount of $1,000 will be owed on account of Reimbursable Expenses. The Debtors anticipate that certain of the checks issued for Reimbursable Business Expense detailed above may not have cleared as of the Petition Date.

*Vacation Pay*

24. The Debtors provide their full time Employees with paid vacation. Vacation accruals are based on years of service, such that for (i) full time Employees, after the first full year of service, such Employees are given two weeks vacation. With respect to three (3) members of senior management, after their fifth full year of service, such Employees are given four weeks of paid vacation.

25. In the event an Employee chooses not to use vacation days, those days are lost (as of December 31st of a given year). If, however, an Employee separates from the Debtors prior to using vacation days, (and meets the requirement for payment of accrued vacation pay) the Employee retains the benefit of and is entitled to receive payment for any unused amount of vacation days.

*Employee Leasing Services*

26. As noted above, the Debtors utilize the services of Oasis, an unrelated entity to the Debtors, as their employee leasing service. Oasis provides complete payroll services,

including distribution of employee pay and remittance of withheld amounts to appropriate taxing authorities and third parties, as well as provides the necessary workers compensation insurance required under Florida law. Oasis also handles workers compensation for the Debtors' Employees. The monthly cost to the Debtors for these services is approximately $3,000 or approximately 3% of the gross wages. The loss of these services by Oasis would impose a severe administrative burden on the Debtors and could disrupt the payment of Employee Obligations. Therefore, the Debtors seek the authority to continue paying for these services, in the Debtors' sole discretion.

## Basis for Relief

27.  By this Motion, the Debtors request that the Court enter an order, pursuant to sections 105(a), 363(b) and 507(a)(4) and (a)(5) of the Bankruptcy Code, authorizing, but not directing, the Debtors to continue to pay or otherwise honor the Employee Obligations and Employee Benefits that accrued before the Petition Date and to continue paying or otherwise honoring the Employee Obligations and Employee Benefits in the ordinary course of the Debtors' businesses. See In re ITG Vegas, Inc., Case No. 06-16350, (Bankr. S.D. Fla. Dec. 6, 2006) [Docket No. 18]; In re Fountain Imaging of N. Miami Beach, LLC, Case No. 06-12686, (Bankr. S.D. Fla. June 26, 2006) [Docket No. 28]; In re Gemini Cargo Logistics, Inc., Case No. 06-10870, (Bankr. S.D. Fla. March 20, 2006) [Docket No. 67]; In re Atlas Worldwide Aviation Logistics, Inc., Case No. 04-10792, (Bankr. S.D. Fla. Feb. 10, 2004) [Docket No. 135]; In re Fine Air Servs. Corp., Case No. 00-18671, (Bankr. S.D. Fla. Oct. 2, 2000) [Docket No. 28].

28.  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that "[t]he court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

29.     Sections 507(a)(4) and (a)(5) of the Bankruptcy Code give priority up to $11,725.00 per individual for pre-petition claims for wages, salaries, vacation and sick leave and claims for contributions to employee benefit plans. The Debtors believe that the pre-petition Employee Obligations are entitled to priority under section 507(a)(4) and (a)(5), as all Employees are currently owed less than $11,725.00. Thus, granting the relief sought herein would only affect the timing, and not the amount, of the payment of the Employee Obligations and Employee Benefits to the extent that they constitute priority claims.

30.     The vast majority of the Debtors' Employees rely exclusively on their full compensation to continue to pay their daily living expenses. These individuals will be exposed to significant financial difficulties if the Debtors are not permitted to pay the unpaid Employee Obligations. Moreover, the Debtors submit that if they are unable to honor their Employee Obligations, Employee morale and loyalty will be jeopardized at a time when such support is critical.

31.     The Employees perform functions critical to the continued operation of the Debtors' business operations and are necessary to the Debtors' efforts to restructure their business. Therefore, payment of the Unpaid Wages and Salaries is in the best interests of the Debtors' estates and creditors.

32.     The continued maintenance of the Employee Benefits is also crucial to the Debtors' business operations. If the Debtors are not authorized to pay and to continue these various obligations, many of the Debtors' Employees will not be reimbursed or have their benefits claims paid. In addition, certain Employees may become primarily obligated for the

payment of these claims in cases where health care providers have not been reimbursed and may face termination of health services.  The Debtors believe such uncertainty will cause significant anxiety for their Employees precisely when the Debtors need their Employees to perform their jobs at peak efficiency.  Furthermore, the Debtors will incur a substantial cost if they fail to pay and subsequently default on the Health Benefits and thereafter are required to provide new coverage for their Employees.

33. The Employees are essential to an orderly and successful restructuring of the Debtors' business operations.  They have an intimate knowledge of the Debtors' business and any deterioration in morale, welfare and focus at this critical time undoubtedly would adversely affect the Debtors, the value of their assets and business, and ultimately, the Debtors' ability to achieve a successful restructuring.

34. Under the "necessity of payment" rule, first enunciated by the Supreme Court in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286 (1882), a bankruptcy court may use its section 105 equitable powers to permit a debtor-in-possession to pay pre-petition claims when payment is necessary to effectuate a successful reorganization.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (necessity-of-payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").

35. The continued service and dedication of the Employees is critical to the Debtors' reorganization.  Many courts have recognized the importance of a debtor's ability to pay pre-petition wages.  See In re Quality Interiors, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) (stating that, "[t]his Court often permits the payment of pre-petition wages so that the debtor-in-

possession may maintain an effective work force, especially where the amount of the payment is relatively small and where it appears that the wages being paid would ultimately qualify as priority claims"). Likewise, in In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989), the court permitted Eastern Air Lines, Inc. ("Eastern") to pay its current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims, relying on section 105(a) to effectuate a restructuring of Eastern's finances to provide jobs for its employees. *Id.* at 177.

36.     This Court and other courts routinely permit debtors to pay prepetition wage, salary, expense, and benefit claims if payment of such claims was necessary to effectuate a successful reorganization. See In re ITG Vegas, Inc., No. 06-16350, (Bankr. S.D. Fla. Dec. 6, 2006) [Docket No. 18]; In re Fountain Imaging of N. Miami Beach, LLC, Case No. 06-12686, (Bankr. S.D. Fla. June 26, 2006) [Docket No. 28]; In re Gemini Cargo Logistics, Inc., Case No. 06-10870, (Bankr. S.D. Fla. March 20, 2006) [Docket No. 67]; In re Atlas Worldwide Aviation Logistics, Inc., Case No. 04-10792, (Bankr. S.D. Fla. Feb. 10, 2004) [Docket No. 135]; In re Fine Air Servs. Corp., Case No. 00-18671, (Bankr. S.D. Fla. Oct. 2, 2000) [Docket No. 28]; see In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages and benefits, and health, life, and workers' compensation insurance premiums); In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987) (affirming order authorizing debtor to pay certain pre-petition wages, salaries, employee reimbursement expenses and benefits, including payments on workers' compensation claims).

37.     The relief requested in this Motion is necessary and should be authorized under section 105 of the Bankruptcy Code. The Employees are vital to the continued operation of the Debtors' business and to their successful reorganization. Authorization to pay the Employee

Obligations and Employee Benefits is necessary to maintain the Employees' morale and to prevent many of them from suffering extreme personal hardship or from seeking other employment. Accordingly, the relief sought herein is consistent with sections 105(a) and 507(a).

38.     The Debtors are not requesting the assumption of any agreement in this Motion and, therefore, nothing contained in this Motion shall constitute a request for authority to assume any policy, procedure, or executory contract that may be described or referenced herein.

### Notice

39.     Notice of this Motion has been given to (i) the Debtors' twenty (20) largest unsecured creditors; (ii) the Debtors' pre-petition secured lenders and/or any agent therefor; (iii) the United States Trustee for this District; and (iv) the Internal Revenue Service. No trustee, examiner or creditors' committee has been appointed in these cases. In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

### No Prior Application

40.     No previous application for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Debtors request entry of an order granting the relief requested herein and such other and further relief as is just.

**Certifications**

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

Dated March: 5, 2012

        Respectfully submitted,

        **MARSHALL GRANT & GRIFFIN, P.L.**
        Proposed Attorneys for the Debtors and Debtors In Possession
        197 South Federal Highway, Suite 300
        Boca Raton, Florida  33432
        Telephone No. 561.672.7580
        Facsimile No. 561.672.7581
        Email:  jgrant@mggpl.com
        Email:  amarshall@mggpl.com


        By:   /s/ Joe M. Grant
            JOE M. GRANT
            Florida Bar No. 137758
            ADAM D. MARSHALL
            Florida Bar No. 579823

and

        **MARSHALL GRANT & GRIFFIN, P.L.**
        Proposed Attorneys for the Debtors and Debtors In Possession
        380 Lexington Avenue, 17th Floor
        New York, New York 10168
        Telephone No. 212.920.7637
        Facsimile No. 212.920.7927
        Email: sgriffin@mggpl.com


        By:   /s/ Scott A. Griffin
            SCOTT A. GRIFFIN
            Florida Bar No. 11913